here on behalf of Freedom Path. The District Court denied Freedom Path's facial challenge by concluding that Revenue Ruling 2006-4, which is known as the Facts and Circumstances Test, is nothing more than an economic regulation that does not require strict scrutiny analysis. The District Court's opinion was based largely on two cases, Regan v. Taxation with Representation and Village of Hoffman Estates, and unless this Court kind of directs me otherwise, I intend to kind of spend the bulk of my argument talking about these cases in detail. I do have, I guess going to the justiciability issues that the other side raises, let's say you win this appeal and we say that this revenue ruling is unconstitutional. How are you better off? Because the IRS, it seems to me, then they have to decide whether you qualify as this type of organization under a more vague standard that gives them even more discretion, because the regulation that you haven't challenged would just say the question is whether you're primarily engaged in promoting social welfare, which does not include participation in political campaigns. Yes, Your Honor. What we would hope that's not true. First of all, do you agree that's vaguer than even what you challenged? What we would do is employ a test that is constitutional and objective. That way, when our future speech is analyzed under the IRS's test and ultimately when our application is reviewed, we have a guarantee that they are going to be applying a constitutional test. But let's say they say, look, we got in trouble with the last revenue ruling. Let's just not do one. We're just going to use this regulation, which, I mean, the regulation's a lot vaguer. Well, I think the IRS would be in a position where they would have to issue some kind of guidance to the regulatory community as to what the standard is for what is issue advocacy versus what is political advocacy. Let me ask you about the nature of this case. You had an actual application of the revenue of the determination by the IRS of whether you were a 501c4. It was tentative. You had the right to pursue it. That would ultimately have led to an as-applied challenge if you'd been willing to go through that route. Why isn't that the proper road to take where we can get away from the issues of standing that we've dealt with, the parties have dealt with? What would have been impractical or insufficient about pursuing an as-applied challenge? It's a good question, Your Honor, because numerous organizations have challenged the constitutionality of the same revenue ruling for more than a decade. When they've effectively been not successful in an as-applied challenge before the ruling, they would file the appeal with the D.C. District Court as the statute requires. In those cases, we've had the IRS issue a refund and render the case moot. They've been able to protect judicial review of the constitutionality of this test through those... No one's being harmed if the injured party gets their money back. What's the harm? That actually gets to the point of, I think, the distinction in our challenge versus other cases. Let's talk about the injury because you say in your brief you have no investment income. So as I understand it, you can be a social welfare organization and you can run ads a fair amount of time that are deemed by the IRS to be supportive of a political candidate, and yet you'd pay zero tax. So what's the problem with doing that? Because then the IRS would determine that we are a political organization and that is the potential concern about any 501c4 that is engaged in any political spending is trying to determine at what level is too much that you cross the bounds over into a political organization. And the reason there is harm in that is because once you become a political organization, then your ability to associate with potential particular types of donors... Is there anything in the record that shows any evidence that shows people wanted to make those contributions but were chilled or that your group relies on those contributions from the financial sector or were chilled? I didn't see anything in the record. Your Honor, we didn't assert any evidence of any particular donor that made a statement that you know, in the future, if you become a political organization, then we would not contribute to you. But what we do know is just as a matter of state statutes in various jurisdictions, the SEC pay to play rule, we have a number of laws out there that prohibit certain investment... Your Honor, I've seen those rules, but just to be clear, there's nothing in the record showing either that your organization has relied or wants to rely on those or that people want to contribute who haven't because of this concern. No, Your Honor. If we became a political organization, those rules would just effectively come into place and they could create a situation where previous contributions accepted by the organization would be deemed impermissible. Another aspect in harm, I mean, with that is because when you become a political organization and depending where you are conducting your political activity, there's some instances where you're registering with a particular elections or ethics commission in states where additional contribution limits, source restrictions do apply. So that's just kind of in the backdrop. The concern for any 501c4 organization is what type of spending, how is this classified, how much is too much, because you just can't, you know, effectively spend that money willy-nilly without that concern. I want to ask one more of the justiciability questions I want to ask you about is the statute of limitations, which wasn't raised below, I see that. It's six years to bring a facial challenge to any ruling like this, revenue ruling. You're outside of that. It seems to me the cases that do say you can, if you're, I read the cases to say if you're later subject to final agency action, you're then back in the ballgame of being able to bring a challenge, but how have you been subject at this point to final agency action? Yeah, I think there's a couple of points on this. I think number one, there's the case, the Jensen case, where it talks about you had an administrative action, and this is cited in our brief, where a party was fined, they had the ability to appeal that ruling in the administrative agency, just as we have here, and the court determined that the initial denial was a final agency action, but I'd also point out the final, the statute of limitations applies to substantive agency rulings that are subject to a notice and comment period. This revenue ruling was not. If the government wants to take the position that revenue ruling 2004-6 is not an interpretive ruling, but is instead a substantive ruling, well, we just invalidate it as a violation under the Administrative Procedures Act, because it would be beyond the bounds of their administrative authority, and I think also, too, there's cases that when a regulation is applied, it restarts the statute of limitations, and I know that the court... The Fourth Circuit case on this was a revenue ruling as well, though, wasn't it? The gun case out of the Fourth Circuit? I thought that was the same type of revenue ruling, in higher order, I guess is the name of the case. Higher order. I'll have instances. I think there's just... Maybe that wasn't raised in that particular case, but I know that there was recently a district court case in the Western District of Texas that basically also looked at the interpretive rulings versus substantive rulings. This was a case that was a notice filed within the court within the last week that involved that case and the difference there in the scope. A key point that I think is imperative for this court to understand, because of the reliance on Regan is so strong, we are not challenging the holding of Regan. There's no question that the government has the ability to create rules that create subsidies for social welfare organizations that want to engage in issue advocacy, but not when they're engaged in political speech. That's the difference. Because we are not bringing this challenge in order to get any tax benefit or to any tax subsidy, it is all about our First Amendment freedoms of association and speech. So you agree that tomorrow Congress could say, you know what, let's make 501c4s, social welfare, non-profits, everyone, let's get rid of these exemptions, pay taxes. Absolutely within their authority to change that. So then how is it an overbreath problem? Because your overbreath concern would be the IRS is improperly, incorrectly categorizing some issue advocacy as candidate advocacy. And if they could in there, if it's not unconstitutional to not provide an exemption for that advocacy in the first place. We do not believe that the statute itself that creates, that treats political campaign expenditures as exempt activity that's subject to tax, we don't believe that's overbroad. What we believe is overbroad is the interpretive of our challenge as non-profit organizations is conducting expenditures and determining that it doesn't cross a particular line. When we do not know where that line is or we have no certainty as to where that line is, the necessary effect of that on our organization is to steer far wide and clear of approaching that line out of percussion. And so what ends up occurring is, is what may be a constitutional or even you know statutory authorized content of speech. Groups don't go there because if they get too far from, too close to that line, they don't know the outcome as to how the IRS is going to judge it. And that's what we simply want. We don't want to change the rule that says we can't, we're not asking to spend an unlimited amount of our money on political expenditures. All we want is, is when we do make expenditures, we want an objective test that we understand exactly how to apply it to where we can apply it to a communication, say okay we know that. Do you have a proposal? I mean what would be an idea of something that would provide that guidance? I think that what the Supreme Court and the test that they created in the Wisconsin Right to Life case is a very workable case that for organizations and issue advocacy non-profit groups that make these certain expenditures, they're called electioneering communications because they mention a federal candidate close to an election. But they struck down what was a vague and overbroad test, pretty much resembled this one. They crafted a new test that I think is, is, it's, it's found, it's turned out to be very workable in the regulated community to understand where that is. And I think that's a challenge we face. We have, if our organization, if we did say run an advertisement that constitutes an electioneering communication, but it's not express advocacy, the irony right now is we could be adhering to the Supreme Court's test that they set forth in Wisconsin Right to Life, but the IRS could come out differently in their facts and circumstances tests. There's this, oftentimes this gap, and it's not necessarily because theirs is necessarily more inclusive, more activity. I mean, it, it is, but it's more because you could have a single IRS agent that just interprets these 11 factors differently or uses some other factor into play to just come out to a different conclusion on your expenditure. And that's really the concern here is, and it's, it's, the IRS even admitted it following the Lois Lerner scandal was, hey, the problem with a lot of the unlawful discrimination that occurred here was the fact that we have a very complicated test and a lack of training, and the problem is, is that the agency level in applying the test, that it wasn't their intent to discriminate against anybody, but it was a result of the test. And that's exactly why we are here today. If the problem was the test, let's get the test fixed. That way, the regulated community knows where the boundaries are. So, on your vagueness issue, I, you know, the Internal Revenue Code is notoriously voluminous and complex, and the only, I've seen this big mama rag case from 1980 that everyone's citing that's struck down an IRS rule as vague. Is there any other case in that huge, with that huge Internal Revenue Code that's ever held a provision to be vague? Um, I can cite some that would be at the state level, taxation levels, I think that come to mind even more recently, and post-Reagan and post-Village of Hoffman Estates. Well, in the same year as Reagan was, it was the Minnesota Star and Tribune Company versus Minnesota Commissioner of Revenue. That was a case where there was a use tax, and the court, there wasn't a subsidy involved, it was a taxation case, but the court realized, kind of recognized in that case that it had this separate First Amendment concerns because of the use tax and its impact on newspapers. And so there, even though it was a taxation case, a revenue case, strict scrutiny analysis was applied because of its application to the First Amendment. I would also point to this Fifth Circuit's case, en banc case in 2014, that was, it's a long name, but it was, it was, it was a Veterans Affair versus the Texas Lottery Commission, and that was in an instance with the Texas Bingo Enabling Act. Again, where there was no subsidy, there was no taxes, but the government, the Texas government put on certain restrictions on advocacy, on organizations that took advantage under this Texas Bingo Act. And that was also an instance where strict scrutiny was applied, even though, again, it was a revenue, raising-related statute that the court recognized violated First Amendment issues and ultimately struck down that provision of the law. All right, counsel. Thank you. Representing the government, FLEs, in this case. Your Honor, the principal submission of the government is that this court should conclude that there's a lack of jurisdiction here, starting with standing. The revenue rule is a facial challenge, of course, and the revenue ruling at issue 2004-6, on its face, deals with whether an organization is going to pay a certain kind of tax, a tax under 527F of the Internal Revenue Code, which is a tax that 501c4, 5, and 6 organizations pay on amounts that they spend on advocacy, political advocacy, specifically on influencing or attempting to influence political campaigns. The test on its face does not apply to the determination of whether a organization is eligible for tax-exempt status. Now, to be sure, this test is cited often, and as is the test that's similar to it in the 501c3 context. There's a revenue ruling in 2007-41 that sets up a similar test for 501c3 organizations about determining whether they satisfy the statutory standard at issue there that's about the same sort of thing, whether there's a campaign intervention going on. And the IRS looks to, as a matter of practice, and can look to factors when assessing eligibility. But the standard, as Your Honor said, the standard for eligibility is defined by the regulation. And in the context of that regulatory standard, related to political advocacy, the regulation says that the promotion of social welfare does not include direct or indirect participation or intervention in political campaigns. And so that's the standard that the this particular revenue ruling was eliminated. And so that's a real standing problem for what we take to be the secondary standing. Maybe the primary standing theory is that somehow the injury is caused by Revenue Ruling 2004-6, because even though Revenue Ruling 2004-6 doesn't say it's going to be used to determine eligibility, it is used to determine eligibility. What about their argument that even if they operate as a 501c4 and there's no tax consequence because they don't have the investment income, that that'll result in them application of this Revenue Ruling to keep saying these are improper or taxable expenses, that that would then lead them to being reclassified as this political organization, which they say makes it hard to raise money? Your Honor, I think that's simply not the case. I looked at a number of final, unlike this context where they actually, the appeal is still pending in the IRS agency appeal. The IRS, you have to apply to be a political organization, 527 organization. And my review of the private letter rulings where there's a final determination made of that somebody, that an organization does not qualify as a 501c4 organization and therefore is not going to be recognized as a 501c4 organization, the instruction is to file a 1024, but to file essentially a corporate tax return. So I don't think it's the case that by not being a 501c4, that they would become a political organization under. But would you revoke them? I mean, if a 501c4 is spending 90% of its money on candidate ads, I'm guessing it'd be revoked their status. I mean, you're just saying they'd be like in this no man's land. This is an application for, well, the application that was rejected in a non-final way was an application for recognition of 501c4 status. In this context, unlike some other tax exempt contexts, organizations can self-declare. So they just simply file a tax return that says, they file an informational tax return that states that they're this kind of organization. And the IRS can audit that and say, well, no, you're not. And then that would likely have tax consequences. But the point I really want to make here with the standing question is, this is the revenue ruling, even sort of considered narrowly about whether it's about paying a tax under 527F, or even considered broadly, whether you're eligible for a certain type of tax exempt status. It's clearly about the tax consequences to you of certain types of activity. And there you have this real interlocking issue with the Anti-Injunction Act. Because to the extent that Freedom Path has standing, it's because the adverse tax consequences to them, or potential adverse tax consequences to them, are causing them to chill their speech. And we submit that's not the case. But to the extent that it is the case, their standing is predicated on being able to have this court give them relief that would prevent or restrain those adverse tax consequences. And of course, that runs them right into the Anti-Injunction Act. Because the Anti-Injunction Act says, no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any concerned about adverse tax consequences. And this suit is about preventing the government from imposing adverse tax consequences on them, then they lack jurisdiction under the Anti-Injunction Act. And then just to go... But they seem to say that the status has an effect on their contributions, not really on their tax treatment, but the way they're treated affects whether they're able to pass the Anti-Injunction Act. If it's really just about what their status, if they're given this 501c4 status, and it's not about whether they have to pay any taxes. Well, I think the Anti-Injunction Act is implicated even in that circumstance, because it's about restraining. And so I think this court has interpreted restraining in the context of the Anti-Injunction Act to mean something that can lead to the assessment of taxes. Certainly, as soon as they have investment income, they'll be subject to a tax. And so the extent that they're saying this test is no good, and because it's going to impose these tax consequences on us, I think that will lead to tax consequences. But I also think it comes back to the standing point, too, because take away the revenue ruling, those concerns that they have, those secondary concerns about how state law interacts with this set of tax provisions, would not be altered in any way by the elimination of the revenue ruling. And I want to say, too, because this comes up, my opponent said, well, they'd have to come up with a new test. And I don't think that that's relief that, respectfully, this court can give them. Because, well, just as a general matter, I think that would be true. But in particular here, I think this court should know that the IRS did come up with a new test on the regulation in 2013. It issued an NPRM, a proposed rulemaking. And the NPRM comes up with a different test, frankly, a more bright-line test. And that did not become final. There were lots of reactions to that. It inspired lots of comments. And there's recent sort of budget rulings, Congress has said expressly, the IRS cannot address this issue. So I don't know if that means that Congress plans to address it, but I don't think that the IRS can just, that this court can tell the IRS to come up with a new test, particularly given that set of circumstances. Very briefly on the statute of limitations issue that, Judge Costa, you were asking about, I did want to say that I think it's clear that sort of the test for final agency action is that it's got to be the consummation of an agency's decision-making process, and it's got to determine the rights or obligations and occasion legal consequences. And here, you've got a proposed denial that's been appealed. And so nothing has happened. There's been no assessment of taxes based on that proposed denial. So nothing, no legal consequences have flowed at this point from the proposed denial of the recognition of Freedom Paths. So what would happen, say you're able to get this affirmed, then there's still this issue. Then, because the, I understand the IRS application has been stayed, that would be lifted, a determination would be made, and then they could challenge that in court if they don't like the determination. So to be clear, the IRS, they made a motion at the district court level to say, I think their motion was argument A, don't use the test, but argument B, stay the application. And then by agreement, we consented to argument B. And so that's why the administrative appeal is stayed. But yeah, they can, there's a purpose. So the section 7428 of the Internal Revenue Code gives them a way to challenge that determination, a final determination made to the IRS that they are not tax exempt under 501c4. So assuming that their proposed denial is finalized by the IRS, and the IRS says, yes, we're sticking to this, and you've got too much political campaign intervention to be primarily about social welfare, then they can challenge that denial. And in the context of that denial, they can challenge the test if the test is what the IRS is using. I would say, if you actually look at the proposed denial, I'm sure you have it, it's, I mean, they cite the, the IRS cites the test. They cite the 2004-6 test. They also cite the 2007-41 test, which is similar but not exactly the same. And then when they, in the analysis section, they apply and purport to be applying the regulation, discussing some factors that you could say, you know, have some cross-pollination with those two tests. Getting to the merits, if this Court gets to the merits, we think that taxation with representation is absolutely determinative. It's factually a very similar case where the challenges to the rule preventing 501c3 organizations from engaging in lobbying activity. The Supreme Court says quite clearly that, you know, simply not, deciding not to subsidize lobbying as extensively as it subsidizes other types of activities that nonprofit organizations engage in does not amount to a ban or restraint on speech that gets analyzed under a strict scrutiny analysis. And then secondarily, the Supreme Court said, well, it's also relevant that you can associate with a 501c4 organization that is allowed to lobby. So you, you really have that, that avenue open to you to, to do the kind of speech that you want to do. The, the, the same thing is true here. So for, as an initial matter, it's, you know, this is a, this, this test to the extent that it bears on the, on the eligibility for 501c4 status is about, you know, where the line is about, you know, how, which type of organization, which type of activity that, that the government is going to subsidize in which type of way. And then the Freedom Path, like any other 501c4 organization, has the, the option of creating, it doesn't even have to be a separate organization, just a separate segregated fund that can act as a sort of affiliated political organization. And that... That's just, you open up a bank account? Exactly. There must get a, there must be a point at which if you do that too much, you'll lose your 501c4s. Why wouldn't every... That's not the way that the IRS has interpreted it. Why wouldn't every political organization just do that? Well, I mean, there are different rules that, so the, the, the, the separate account has to satisfy the 527 rules, which there are different rules with respect to like reporting, reporting of donors and, and, and there's certain other things, but, but yeah, I mean, so Freedom Path can either do political campaign intervention, but not so much that it jeopardizes being, you know, not so much, that's primarily what it does. Or even if it wants to do, you know, more than 50% political campaign intervention, it can do a lot of it through a, a 527 organization that's going to be taxed differently, you know, under the, under the 527 rules. And that does, I do want to make one other point, and I apologize for being, for jumping around a little bit, but the other thing that's very critical here, and it's, I guess it's related to the standing piece, is that even though a ruling on, this revenue ruling, I don't think it would have much of an effect, if any, on, on Freedom Path, it clearly would have a major effect on lots of entities, right? So the, the revenue ruling is about, you know, whether something is an exempt function under 527E2, and exempt function activity under 527E2 is communications with the function of influencing or attempting to influence political campaigns, essentially. And that kind of function for certain tax-exempt organizations, 501C4, 5, and 6 organizations, subject them to a specific tax, okay? So your, your amount of your, your subject to tax, assuming you have net investment income. So, you know, it's going to change, if we change the rules about that, then, you know, lots of 501C4, 5, and 6 organizations do have net investment income, and the rules about when they're subject to a certain tax are going to, I mean, eliminating this revenue ruling will provide substantially less clarity for those organizations about, you know, when they're going to be subject to this tax. And not only that, as a general matter, and this is why it's confusingly labeled an exempt function, is 527 organization, political organizations, speaking generally, are tax-exempt on political campaign intervention type communications, and as a general matter, not tax-exempt on other types of things, including issue advocacy. So it would also, by extension, I think, create confusion and change the rules about, you know, what counts as campaign intervention for political organizations themselves who want, want, you know, things, want a broad definition of that category so that they can, you know, have a broad understanding of when they're tax-exempt. So I think that's important for this If there are any particular questions about the sort of merits piece or any of it that, that I've, I've realized have not hit everything, I'm happy to go there at this point. Thank you, counsel. That's all we have. I'd like to quickly address... I see she gave you five minutes, didn't you just reserve three? Not that we don't hear you, but... So real quickly, counsel said that we had requested at the lower court a stay of our application. It is the IRS's policy not to process pending applications during litigation, and so that was the case, and no application was approved. Then upon appeal, we did enter an agreement that it would continue not to be processed until the finality of this. Number two, the option of creating a separate segregated fund or different political organization, this argument has been made. We are not necessarily opposed to creating a separate segregated fund to conduct our political activity. The problem is, is that we're still left in the same situation of any time we make an expenditure, we have to know what is political activity or not. So the ability to have an outlet for a separate 527 organization is not really any solution at all, because we're left in the same position of trying to analyze some tests that we don't understand. Well, err on the side of saying it's a campaign. How do you put it in that fund, and you're not paying any tax anyway? You are paying tax. You're limiting that to particular donors. That therein lies the err on the side of safety, and that is now impacting your rights to freedom of speech and association. That is the exact opposite. But how would you owe a tax? On that money that comes in through there, that would be subject to the excess. All right, but you don't have investment income, I mean. Or the investment income. We're left in the same situation. Really, the 527 option has no impact on us, other than erring on the side of caution is a violation of our First Amendment rights. Number three, we talked about if we are denied application, the question of what we become. By law and statute, if your primary purpose as an organization is to influence the outcome of an election, by statute, you are a political organization. So if the IRS determines that we are primarily engaged to influence the outcome of an election, by statute, we are a political organization. He also said that you have to apply to become a political organization. There is no application. It's a matter of filing a form. It's the IRS form 8871 that says we're a political organization. The IRS doesn't look at it, review it, and determine whether you're something else. Where you'd clearly be a political organization if we are ultimately denied. Number four, the taxing time, Judge Iannacchi, talked about how it would apply, just kind of in a way, because there's a, my time is up, so. Your brief covers many things. Right. Thank you, Your Honors. Appreciate it. This panel will take a brief recess before hearing the next argument.